UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**MARCUS LEON BATES**                                                  **PLAINTIFF**

vs.                                            **CIVIL ACTION NO. 3:19-CV-343-CRS**

**CHRIS SMITH**                                                       **DEFENDANT**

**MEMORANDUM OPINION**

Plaintiff, Marcus Leon Bates ("Bates"), filed a *pro se* 42 U.S.C. § 1983 complaint, proceeding *in forma pauperis*, against Defendant Chris Smith ("Smith") in his individual and official capacity. DN 1. We previously construed Bates's Complaint as alleging Fourth Amendment claims for illegal search and seizure and false arrest. DN 6 at 2.

This matter is before the Court on Smith's motion for summary judgment. DN 30, 30-1. Bates filed a document entitled "Plaintiff's Motion to Deny Summary Judgment," and attached several exhibits, which we will treat as his response to Smith's motion. DN 41. Bates then filed a reply to the response. DN 43. The matter is now ripe for review.

For the reasons stated herein, Smith's motion for summary judgment will be granted.

**I. BACKGROUND**

On June 21, 2018, Smith, a trained K-9 officer with the Elizabethtown Police Department ("EPD"), stopped a 2008 Chevy Impala after observing that its driver failed to utilize the car's right turn signal. DN 30-2 at 1, 30-4, 30-9 at 1, 33 at 1, 39 at 15:50:33. Smith initially suspected that the vehicle's occupant might be involved in some drug-related activity because the vehicle's license plate indicated it was not registered in Hardin County and the car was being driven through

an area of Elizabethtown, referred to by Smith as "The Bottoms," which he contends is a hotspot for drug related activity. DN 30-2 at 1-2.

Smith approached the vehicle and informed Bates, the car's driver, why he was pulled over and asked Bates where he was going. DN 30-2 at 2, 30-6 at 4, depo. p. 11, 30-10, 42-1 at 1. Smith contends that Bates became "immediately irate" and provided vague and inconsistent answers. DN 30-2 at 2, 30-10. Bates denies that he failed to use his turn signal, demonstrated irrational behavior, and that he provided inconsistent explanations for his presence in the neighborhood. DN 30-6 at 4, depo. p. 11, 13, 42-1 at 1-2. Instead, Bates contends that he informed Smith that he was going "to pick up his daughter" or "going to have lunch with her." DN 30-6 at 4, depo. p. 10, 42-1 at 1. Regardless, Bates provided his driver's license and insurance card upon request following this exchange. DN 30-2 at 2, 30-6 at 4.

Smith returned to his squad car to query Bates's information. DN 30-2 at 2, 30-10. Upon discovering Bates's prior convictions, Smith approached Bates's vehicle to ask if he could perform a canine walkaround sniff of Bates's car. DN 30-2 at 2. Bates declined Smith's request and allegedly stated that the "K-9 walk around would be illegal." DN 30-6 at 4, depo. p. 13, 33 at 1, 42-1 at 2. Nonetheless, Smith retrieved Lola, a police canine, from his patrol car. DN 30-2 at 2, 30-9 at 1, 30-10, 39 at 15:59:33-16:00:00. As Lola walked past the driver's side door, she gave a passive alert signal of drug possession. DN 30-2 at 2, 30-9 at 1, 30-10, 39 at 16:00:14-17. The canine search lasted less than one minute. DN 39 at 15:59:33-16:00:25.

Smith then asked Bates if he could search the interior of his vehicle. DN 30-2 at 3, 30-9 at 1. Bates declined. DN 30-6 at 4, depo. p. 13, 42-1 at 2. Nevertheless, Smith ordered Bates out of his vehicle and performed a pat down of his person. DN at 30-2 at 3, 30-9 at 1, 39 at 16:00:33-01:00. Following the pat down, Bates contends that he was handcuffed and placed in a squad car

while officers performed a search of his vehicle. DN 30-6 at 5, depo. p. 15, 33 at 1-2, 42-1 at 2. The search ultimately revealed forty-four pills that had been dumped into the car's ashtray that was filled with water. DN 30-2, 30-9 at 1, 30-10, 39 at 16:01:05-14:00. Smith and his fellow officers seized the pills but could not determine what they were. DN 30-9 at 1, 39 at 16:03:50-14:00.

Smith informed Bates that he planned to send the pills to the Kentucky State Police ("KSP") for further investigation. DN 30-2 at 3, 39 at 16:15:30-16:16:10. Smith explained that if the tests revealed Bates's pills contained a controlled substance, he would be arrested. DN 30-2 at 3, 39 at 16:15:30-16:10. Smith removed the handcuffs from Bates and issued him a citation for "failure to or improper signal" and "failure of owner to maintain required [insurance]" and terminated the traffic stop.[1] DN 30-2 at 4, 30-8, 39 at 16:23:24-24:08, 42-1 at 2.

The KSP tests determined that the pills found in Bates's car contained "heroin and fentanyl," and an arrest warrant for Bates was issued. DN 30-2 at 4, 3-10. Bates was arrested in October 2018; however, Smith was not present during the arrest. DN 30-6 at 5, depo. p. 17.

Bates appeared before Judge Kimberly Shumate for a preliminary hearing in October 2018. DN 30-17. After hearing testimony from Smith about the traffic stop and subsequent searches, Judge Shumate determined that probable cause existed for the charges of trafficking in a controlled substance and tampering with physical evidence. DN 30-17 at 10, 11. A grand jury subsequently indicted Bates on five counts: (1) trafficking in a controlled substance, first-degree, Schedule 1, heroin and/or fentanyl, second or subsequent offense; (2) possession of a handgun by a convicted felon; (3) tampering with physical evidence; (4) receiving stolen property; (5) persistent felony offender first degree. DN 30-12.

---

[1] According to Bates, the charges for failure to use his turn signal and failure to maintain insurance were dropped. DN 7.

3

At a scheduled suppression hearing in May 2019, Bates pled guilty to four counts, including trafficking in a controlled substance and tampering with physical evidence, and was sentenced to prison for ten-years.[2] DN 30-13 at 3-11. His conviction or sentence have not been overturned.

## II. LEGAL STANDARD

A party moving for summary judgment must demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263 (1986). An issue of material fact is genuine if a rational fact finder could find in favor of either party on the issue. *Id.* at 248.

In undertaking this analysis, the Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The party moving for summary judgment bears the burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A party can meet this burden by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute." Fed. R. Civ. P. 56 (c)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

---

[2] The Commonwealth agreed not to enhance Bates's offenses based on a second or subsequent offender charge and modified the trafficking charge to a class C felony. DN 30-13 at 9.

4

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (internal citation and quotation marks omitted).

### III. ANALYSIS

In his Complaint, Bates alleges that Smith violated his Fourth Amendment rights by "extending the traffic stop to conduct a drug search," conducting the canine search without reasonable suspicion, and searching his car without probable cause. DN 1 at 4-5, 6 at 1. He also alleges that Smith "violated [his] constitutional rights when [Smith] illegally seized [him] as a person" after he was placed in handcuffs so Smith could perform the vehicle search. DN 1 at 5, 6 at 2.

#### A. The *Heck* Doctrine Bars Bates's Claims

Smith contends that this Court should grant summary judgment in his favor because a finding for Bates would "negate essential elements of Bates' prior criminal convictions." DN 30-1 at 9. Bates attempts to defeat this argument by asserting that his claims do not "reference [] any outstanding convictions" because "[t]he results of [Smith's] illegal search has no bearing on this civil action as the search cannot be justified by the illegal search." DN 41-1 at 2-3.

Section 1983 establishes tort liability for the deprivation of federal rights by persons acting under color of state law. 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state

5

law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

A plaintiff that has been convicted of a crime, however, must consider the *Heck* doctrine because it generally prohibits the use of actions under § 1983 as an avenue to launch a collateral attack upon a prior criminal conviction. *See Harper v. Jackson*, 293 F. App'x 389, 391 (6th Cir. 2008) (quoting *Heck v. Humphrey*, 512 U.S. 477, 486 (1994) ("The *Heck* bar exists because the Court's respect for 'finality and consistency' precludes a prisoner's use of § 1983 to collaterally attack an outstanding conviction"). In *Heck*, the United States Supreme Court addressed whether a prison inmate could maintain a § 1983 suit in which he alleged that the defendants (the prosecuting attorney and a state police investigator) violated his constitutional rights by conducting an illegal investigation leading to his arrest, destroying exculpatory evidence, and using an illegal voice-identification procedure at his trial. *Id*. at 478–79. The Supreme Court held that a § 1983 action in connection with an unlawful conviction or sentence will not lie unless the claimant can show that the underlying conviction or sentence has been invalidated:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id*. at 486–87. Moreover, the Supreme Court instructed that even if the plaintiff challenges something other than his conviction or sentence, where a ruling in his favor would "necessarily imply the invalidity of his conviction or sentence, . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487; *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is

6

barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit . . . – if success in that action would necessarily demonstrate the invalidity of confinement or its duration").

The *Heck* doctrine applies with some limitations in the Fourth Amendment context. The *Heck* Court observed that, even if successful, some Fourth Amendment claims brought under § 1983 "would not necessarily imply that the plaintiff's conviction was unlawful" due to doctrines like independent source, inevitable discovery, and harmless error. *Id*. at 487 n. 7; *see also Hill v. Snyder*, 878 F.3d 193, 207 (6th Cir. 2017) ("The word 'necessarily' must not be ignored—if invalidation of a conviction or speedier release would not automatically flow from success on the § 1983 claim, then the *Heck* doctrine is inapplicable"). The United States Supreme Court has also stated that "a Fourth Amendment claim *can* necessarily imply the invalidity of a conviction, and . . . if it does it must, under *Heck*, be dismissed." *Wallace v. Kato*, 549 U.S. 384, 395 n. 5 (2007) (emphasis added).

The burden is ultimately on the district court to assess whether a favorable ruling will impugn the validity of an outstanding conviction. *See Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995). In essence, "*Heck* bars § 1983 Fourth Amendment claims where the contested search produced the only evidence supporting the conviction and no legal doctrine could save the evidence from exclusion." *Harper v. Jackson*, 293 F. App'x 389, 392 (6th Cir. 2008). However, in situations in which a conviction would not necessarily be impugned even if the plaintiff succeeds on his § 1983 Fourth Amendment claims, *Heck* does not bar the suit. Thus, we "must look both to the claims raised under § 1983 and to the specific offenses for which [Bates] was convicted" to determine whether his suit is barred by the *Heck* doctrine." *Swiecicki v. Delgado*, 463 F.3d 489, 493 (6th Cir. 2006), abrogated on other grounds by *Wallace v. Kato*, 549 U.S. 384 (2007).

Here, Bates's conviction has not been reversed, so the question is whether his § 1983 suit is an attempt to invalidate his conviction. There is no question that, if this Court were to find that Smith unconstitutionally "extended a traffic stop to conduct a drug search," performed a canine search without sufficient facts to justify reasonable suspicion, searched the interior of Bates's car without probable cause, or seized evidence unlawfully, as Bates claims, it would "necessarily imply the invalidity of [Bates's] conviction . . . ." DN at 1 at 4-5, 41-1 at 4-7.

Bates entered a guilty plea for trafficking in a controlled substance first-degree and tampering with physical evidence, among other charges, and was sentenced to prison for ten years. DN 30-13 at 3-11. Both charges unquestionably derive from the searches Smith performed—the canine search as well as the search of Bates's vehicle. Moreover, the contested search and seizure produced the only evidence (i.e., pills containing heroin and fentanyl) that supported the charges against Bates, along with his conviction. Without this evidence, there is little doubt that Bates would not have pled guilty to the charges. Thus, if we were to opine that Smith lacked reasonable suspicion or probable cause based on Bates's car registration from another county, his alleged inconsistent explanations for being in "The Bottoms," his behavior during the traffic stop, or his prior criminal history, it would require this Court to question Bates's conviction.

Bates's claim against Smith for false arrest is also barred under *Heck*. *See Hanley v. Brumback*, No. CV 6:19-254-KKC, 2020 WL 6302266, at *4 (E.D. Ky. Oct. 26, 2020) (plaintiffs' claim for false arrest was barred under the *Heck* doctrine because the officers had probable cause to arrest the plaintiffs after being called to the scene to investigate an assault and the plaintiffs' convictions for assault had not been invalidated); *but see Graves v. Mahoning*, 534 F. App'x 399, 405 (6th Cir. 2013) (finding that *Heck* does not bar a plaintiff's unlawful arrest claims where no evidence was uncovered during the arrest upon which the plaintiff's conviction

was based and that therefore a finding that plaintiff's arrests violated the Fourth Amendment would not necessarily invalidate his conviction).

Following the canine search that evidenced a passive alert for drug possession, Smith approached the car and saw that "[Bates] had a half-filled water bottle in his hand." DN 30-9 at 1. Smith ordered Bates out of the car, performed a pat down, and detained Bates to begin his search of Bates's vehicle. DN 30-2 at 3, 30-9 at 1, 39 at 16:00:33-01:00, 42-1 at 2. Smith observed an "ashtray container [that] was filled with water" and "several pills at the bottom of the container." DN 30-9. Smith then dumped the pills out of the ashtray, noticed an imprint, which poison control advised might indicate that the pills were oxycodone, and "an empty film canister sitting on the passenger seat," which was "not present in that location at the time of the initial stop." DN 30-2 at 3, 30-9 at 1. However, Smith was unable to confirm whether the pills were a controlled substance. DN 30-9 at 2, 39 at 16:03:50-14:00. As such, he removed the handcuffs from Bates, issued him a traffic citation, and terminated the stop. DN 30-6 at 5, depo. p. 15, 39 at 16:23:24-24:08, 42-1 at 2.

Taken together, the facts clearly lead to the conclusion that Bates was only handcuffed while officers performed the vehicle search and after Smith discovered numerous pills that he believed might be oxycodone, a controlled substance. *See Smoak v. Hall*, 460 F.3d 768, 782 (6th Cir. 2006) (internal citation and quotation marks omitted) ("The law is clear that once the purposes of the initial traffic stop are completed, there is no doubt that the officer cannot further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the reasonable suspicion to justify a further detention"); *United States v. Atchley*, 474 F3d 840, 845 (6th Cir. 2007) (holding that an officer's use of handcuffs is permissible as a safety precaution where a suspect appeared nervous and lied to officers); *see also Miller v. Sanilac Cty.*, 606 F.3d

240, 248 (6th Cir. 2010) ("An arrest is valid under the Fourth Amendment so long as there is probable cause for a single charge of an arrestable offense"). Further, the evidence uncovered during the search, which was performed while Bates was detained, formed the basis of his conviction. Thus, any argument that Smith performed a false arrest during the traffic stop would, indeed, impugn Bates's underlying conviction, flying in the face of *Heck*.

Accordingly, Smith's motion for summary judgment is granted because the relief sought by Bates would necessitate finding that the state court conviction was invalid.

## V. CONCLUSION

For the reasons discussed herein, Smith's motion for summary judgment will be granted by separate order.

November 24, 2020

Charles R. Simpson III, Senior Judge
United States District Court